In The
UNITED STATES COURT OF APPEALS
For The Eighth Circuit

No. 22-1284

Criminal

UNITED STATES OF AMERICA,

Appellee,

v.

JOHNNIE LAMAR HAYNES,

Appellant.

Appeal from the United States District Court for the
District of Minnesota
The Honorable Wilhelmina M. Wright

BRIEF OF APPELLANT

**JENNIFER M. MACAULAY**
Attorney I.D. 316842
3300 Edinborough Way, Suite 550
Edina, MN 55435
651-231-1237

Counsel for the Appellant

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

Johnnie Lamar Haynes was found guilty by a jury and convicted of Felon in Possession of a Firearm on or about August 5, 2019, in violation 18 U.S.C. §§2 and 922(g)(1), and Felon in Possession of Ammunition on or about August 5, 2019, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). Mr. Haynes was sentenced to 115 months imprisonment on each count, with terms to run concurrently.

Mr. Haynes appeals his conviction and sentence on grounds that there was insufficient evidence to support a conviction, and that the sentence was unreasonable and disproportionate to the offense conduct as alleged.

Appellant requests 10 minutes for oral argument.

i

# TABLE OF CONTENTS

**Page**

SUMMARY AND REQUEST FOR ORAL ARGUMENT.....................................i

TABLE OF AUTHORITIES ............................................................... iv

PRELIMINARY STATEMENT ..............................................................1

STATEMENT OF ISSUES ....................................................................2

STATEMENT OF THE CASE .................................................................3

SUMMARY OF ARGUMENT .............................................................10

ARGUMENT .................................................................................11

   I.   THE DISTRICT COURT ERRED IN DENYING THE
   MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE
   CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT
   EVIDENCE. ...........................................................................**11**

      A.   Standards of review ......................................................**12**

      B.   There was insufficient evidence that the firearm in question had moved
      in interstate commerce. ..................................................**12**

      C.   There was insufficient evidence that the ammunition was connected to
      this particular shooting incident, nor to Mr. Haynes. .........................**13**

  II.  THE SENTENCE IMPOSED WAS SUBSTANTIVELY
  UNREASONABLE. ..................................................................**15**

      A.   Standard of review ......................................................**16**

      B.   The sentence did not adequately account the hardship of the 28 months of
      "hard time" served in the Sherburne County Jail under COVID restrictions...**17**

      C.   The sentence did not properly consider Mr. Haynes' personal history and

Appellate Case: 22-1284   Page: 3   Date Filed: 06/28/2022 Entry ID: 5172136

characteristics. .......................................................................................**18**

CONCLUSION ................................................................................20

Certificate of filing

Certificate of compliance / service

ADDENDUM

Appellate Case: 22-1284    Page: 4    Date Filed: 06/28/2022 Entry ID: 5172136

# TABLE OF AUTHORITIES

**Cases**

In re Winship, 397 U.S. 358 (1970)................................................................14

Jackson v. Virginia, 443 U.S. 307(1979)........................................................14

Koon v. United States, 518 U.S. 81 (1996) ....................................................19

Pepper v. United States, 562 U.S. 476 (2011) ...............................................19

United States v. Brown, 634 F.3d 435 (8th Cir. 2011)....................................12

United States v. Carter, 270 F.3d 731 (8th Cir. 2001)...............................2, 12

United States v. Cook, 356 F.3d 913 (8th Cir. 2004) .....................................11

United States v. Diggs, 527 F.2d 509 (8th Cir. 1975) ................................2, 15

United States v. Edmonds, 920 F.3d 1212 (8th Cir. 2019).............................18

United States v. Fiorito, 07-CR-212 (PJS/JSM), 210 U.S. Dist. LEXIS 36855, 2010

    WL 1507645 (D. Minn. April 14, 2010), aff'd 640 F.3d 338 (8th Cir. 2011).....17

United States v. Green, 691 F.3d 960 (8th Cir. 2012) .....................................16

United States v. Jeffries, 615 F.3d 909 (8th Cir. 2010)...................................16

United States v. Pizano, 403 F.3d 991 (8th Cir. 2005)....................................16

United States v. Savatdy, 452 F.3d 974 (8th Cir. 2006)..................................11

United States v. Schmidt, 571 F.3d 743 (8th Cir. 2009) .................................12

United States v. Serrano-Lopez, 366 F.3d 628 (8th Cir. 2004)......................15

Appellate Case: 22-1284    Page: 5    Date Filed: 06/28/2022 Entry ID: 5172136

United States v. Shuler, 598 F.3d 444 (8th Cir. 2010) ............................................16

United States v. Sullivan, 714 F.3d 1104 (8th Cir. 2013) ......................................12

United States v. Wallenfang, 568 F.3d 649 (8th Cir. 2009) ....................................12

United States v. Wells, 706 F.3d 908 (8th Cir. 2013) .............................................11

United States v. Wiest, 596 F.3d 906 (8th Cir. 2010) .............................................11

Victor v. Nebraska, 511 U.S. 1 (1994) ...................................................................14

Williams v. New York, 337 U.S. 241 (1949) ...........................................................19

**Statutes**

18 U.S.C. §2 .......................................................................................................... i, 3

18 U.S.C. §3553 ............................................................................................ 2, 16, 20

18 U.S.C. §922 ................................................................................................. i, 3, 12

18 U.S.C. §3231 ........................................................................................................1

18 U.S.C. §3553 ......................................................................................................10

18 U.S.C. §3742 ........................................................................................................1

18 U.S.C. §924 .......................................................................................................... i

28 U.S.C. §1291 ........................................................................................................1

v

## PRELIMINARY STATEMENT

The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, presided over Mr. Haynes' jury trial and sentencing. The government invoked the jurisdiction of the district court pursuant to 18 U.S.C. §3231.

The district court clerk entered judgment on the docket on January 28, 2022. On February 7, 2022, Mr. Haynes, through counsel, filed a Notice of Appeal. This Notice was timely within the meaning of Federal Rule of Appellate Procedure 4(b). Mr. Haynes invokes the jurisdiction of this Court pursuant to 18 U.S.C. §3742 and 28 U.S.C. §1291.

1

# STATEMENT OF ISSUES

## I.

Whether the government presented sufficient evidence at trial to sustain Mr. Haynes' convictions and whether the District Court erred in denying Mr. Haynes' Motion for a Judgment of Acquittal.

*United States v. Carter*, 270 F.3d 731, 734-35 (8th Cir. 2001)

*United States v. Diggs*, 527 F.2d 509, 513 (8th Cir. 1975)

## II.

Whether the sentence imposed was substantively unreasonable?

18 U.S.C. § 3553(a)

*United States v. Miner*, 544 F.3d 930, 943 (8th Cir. 2008)

2

## STATEMENT OF THE CASE
<u>Procedural Posture</u>

On September 26, 2019, a 2-count Indictment was filed charging Mr.

Haynes and Cortez Lamon Shipp with (Count 1) Felon in Possession of a Firearm

on or about August 5, 2019, in violation 18 U.S.C. §§ 2 and 922(g)(1), and (Count

2) Felon in Possession of Ammunition on or about August 5, 2019, in violation of

18 U.S.C. §§922(g)(1) and 924(a)(2), and including Forfeiture allegations.

(Indictment; R. DOC. 1[1].)  This Indictment referenced a "Ruger model Security-9,

9mm semiautomatic pistol. (Id.)   On July 23, 2021, the Government moved to

"narrow" the Indictment, to remove the words "model Security-9" from Count 1 of

the indictment. (R. DOC. 199). The district court granted that motion, over Mr.

Haynes' objection. (R. DOC. 205; 203).

On January 8, 2020, Mr. Shipp pled guilty to Count 2, and agreed to testify

against Mr. Haynes for the Government in exchange for sentencing consideration,

and Count 1 as to Mr. Shipp would be dismissed.  (R. DOC. 257; T.T[2].369-70).

Mr. Haynes proceeded to trial by jury between July 29-August 3, 2021. On August

2, 2021, after the government rested its case, Mr. Haynes, through counsel, made a

---

[1] References to "R. DOC.__" are to the District Court Docket in this case.
[2] References to "T.T.___" are to the Trial transcript.

3

motion for directed verdict. (T.T. 569).  That motion was summarily denied. (T.T. 570).   Mr. Haynes was found guilty on August 3, 2021. (T.T. 663; R. DOC. 221).

On November 20, 2021, Mr. Shipp was sentenced to 42 months imprisonment, representing a substantial downward variance from his guideline's calculations of 77-96 months. (R. DOC. 248; 250).

Mr. Haynes' PSR calculated a presumptive guidelines range of 100-125 months, with a total offense level of 24, and criminal history category of VI. ((Statement of Reasons) R. DOC. 247; PSR).  Mr. Haynes also moved the Court for a sentencing variance, suggesting a sentence of 77 months would be just and appropriate.  (R. DOC. 267).   On January 28, 2022, Mr. Haynes was sentenced to 115 months in prison.  (R. DOC. 273, 274; (Judgement) Add.1).  Notice of Appeal was timely filed on February 7, 2022. (R. DOC. 277).

Factual Background

On August 5, 2019, Minneapolis police responded to a shots fired call at the intersection of Lowry Avenue and Logan Avenue North in North Minneapolis. (T.T. 428).  Police responded to the Full Stop gas station at 1818 Lowry. (T.T. 429).   As part of the ensuing investigation, officers identified eleven (11) discharged cartridge casings at the scene, on Lowry Avenue and Logan Avenue North.  (T.T. 433; 484).   The discharged cartridge casings were stamped "9

4

millimeter Luger", manufactured by CBC. (T.T. 435). 9-millimeter Luger

ammunition is one of the most common types of ammunition. (T.T. 561). Sergeant

Warzinik testified that the casings were "in fairly good condition" when he

collected them, allowing him to conclude "that they were relatively recently fired."

(T.T. 442). The casings were sent for DNA analysis, and there was insufficient

DNA to profile. (T.T. 459).

Police located a handgun magazine identified by the residents at 3215 Logan

Avenue North. (T.T. 436). The magazine had three live rounds. (T.T.444; 457;

463-4). The magazine capacity was 15. (T.T. 540). DNA analysis of the

magazine showed a mixture of four or more individuals, including Mr. Schipp, but

not Mr. Haynes. (T.T. 460; 461).

Sergeant Lepinski was "already familiar with" the Full Stop gas station so he

knew that the station had surveillance and met with employees to retrieve that

footage. (T.T.489). He also obtained surveillance from the city's Milestone

camera at the intersection of Lowry and Logan. (T.T. 490-491), and from the

Moua-Lor Clinic. (T.T. 499).

The surveillance videos show Mr. Haynes and Mr. Shipp at the Full Stop gas

station and appear to depict Mr. Shipp providing a firearm to Mr. Haynes. (T.T.

358). The video also appears to depict Mr. Haynes running after a blue Pontiac

5

and shooting at the car.  (T.T. 345; 358-9; 500-502).   The people in the blue Pontiac are depicted in the surveillance video, but their identities are unknown. (T.T. 355.)

The ShotSpotter system data indicated that 13 shots were fired.  (T.T. 531). There is an unresolved discrepancy as to how the magazine capacity was 15, and there were three live rounds in the magazine that was seized, which would mean that only 12 shots could have come from that magazine, unless a round was chambered in addition to the loaded magazine at the time of the shooting.   Mr. Shipp testified that the firearm he provided to Mr. Haynes on the day in question was loaded, but that a round had not been chambered. (T.T. 341).  In fact, he "put one in the chamber" before he ran towards the Pontiac and "started shooting". (T.T. 349-50).   This could lead to a reasonable inference that the chamber recovered did not fit with the amount of shots fired in this incident.

Some of the shots hit a building across the street, and in the line of fire--- Moua-Lor Chiropractic and Acupuncture Clinic, causing some property damage. No people were injured in the shooting. (PSR, p.2) This wasn't the first time there had been shots fired at this intersection during business hours.  (T.T. 327).  In fact, Laura Her-Kong, a billing clerk at Moua-Lor, testified that there were gunshots at the gas station on a "fairly regular basis." (Id.)

6

After the shooting, both Mr. Shipp and Mr. Haynes left the scene. Mr. Shipp testified that after the shooting he went to the home where he was staying, the home of Savannah Perkins at 3214 Morgan Avenue, changed his clothes and then went back to the Full Stop gas station. (T.T. 416-7). Around that same time, the recovered magazine was located at 3215 Morgan Avenue, across the street from Ms. Perkins' home. Mr. Shipp testified that Mr. Haynes did not join him at that address. (T.T. 417). The Government's theory was that Mr. Haynes must have tripped over a fence while running away and dropped the magazine where it was found. (T.T. 630). Although a K-9 unit was engaged as part of the investigation, there is no evidence that the K-9 unit alerted in such a way that would support this theory. (T.T. 445-6).

The parties stipulated that Mr. Haynes is a convicted felon, prohibited from possession of firearms or ammunition. (T.T. 311; Gov't Exh. 99).

The firearm used in the shooting was never recovered. (T.T. 489). Sergeant Lepinski was tasked with identifying the model of firearm used. (T.T. 486). To do so, he and the prosecutor "took the magazine out of evidence . . . [and] brought that magazine to [the police department's] gun vault" where he "test-fit that magazine into a large amount of handguns." (Id.) The magazine didn't fit into at least "twenty to thirty different 9-millimeter guns". (T.T. 536). It didn't fit

7

into a SIG Sauer handgun. (T.T. 487).  It *did* fit into a Ruger.  (Id.)  It fit into a Ruger Security 9-millimeter and a Ruger SR9c 9-millimeter.  (T.T. 536).  And so, Sergeant Lepinski concluded that the gun used in the shooting must have been a Ruger. (T.T. 488).

The firearm Sergeant Lepinski settled on as the likely culprit, was never test-fired using the recovered magazine. (T.T. 536).  Sergeant Lepinski testified it probably would have been operational because he "heard a click" when he engaged the magazine: "Even if this fit in physically, it wouldn't actually click in, which indicates to me that this magazine does not fit, is not made for that firearm, and it likely would not function, the firearm would not cycle properly." (T.T. 541).

Sergeant Lepinski could not recall the manufacturer types he tried with the clip. (T.T. 542). "There were too many." (Id.)

Mr. Shipp testified that the firearm used was his, and that he gave it to Mr. Haynes. (T.T. 332; 348).   He also testified that he did not believe that the firearm was a Ruger.  (T.T. 413, 414, 419, 420, 422).  When Mr. Shipp was shown a photo of the magazine as part of his proffer meeting, he was unable to identify it as the magazine in the gun involved on August 5, 2019. (T.T. 415).

Sergeant Lepinski acknowledged that when he showed Mr. Shipp a picture of a Ruger Security-9, Mr. Shipp told him *it was not the gun*. (T.T. 538).   Instead,

8

Mr. Shipp thought it was "like a 9, like a Sig, a Sig 9-millimeter" (T.T. 337), or "just a 919" (T.T. 338, 339, 361,420). Mr. Shipp testified that he would remember if the word "Ruger" was on a gun he owned. (T.T. 423). (It was not). Mr. Shipp told the investigating officers, and later testified that in fact, that he called it the "919" because "that's what, like – it's on the clip. It's on the gun too." (T.T. 339). Ultimately, Count 1---alleging possession of a Ruger firearm, was dismissed for Mr. Shipp. (R. DOC. 257).

Special Agent Bryan Lervoog from the Bureau of Alcohol Tobacco and Firearms was the "interstate nexus expert" for determining where fierarms and ammunition are manufactured. (T.T. 547). Agent Lervoog testified that the Ruger firearms are marked with "Ruger" on the handles. (T.T. 556). This is done "very consistently", "on the handle" "in pretty large letters". (T.T. 557). This is usually on "both sides of the handle" and "on the slide". (Id.) It's "pretty obvious when it's a Ruger gun." (Id.) "Ruger very plainly marks their guns as a Ruger firearm." (T.T. 562). If it were a Ruger firearm, then it would have had to have traveled in interstate commerce to come to be in Minnesota, because Ruger firearms are not manufactured in Minnesota. (T.T. 552).

However, Agent Lervoog also acknowledged that Magnum Research, Inc., manufactures the MR9 Eagle and MR40 Eagle, in Pillager, Minnesota. (T.T. 558).

9

The MR9 Eagle, 9-millimeter pistol manufactured in Minnesota, would have the imprint '9x19' engraved on the chamber, (T.T.559-60), just as Mr. Shipp had explained was the marking on the gun he shared with Mr. Haynes. And the "MR9Eagle/MR50 Eagle 'Fast Action' is available in 9-millimeter by 19 and .40 Smith & Wesson cartridges with Traditional Double-Action/Single-Action trigger with Decocker", making the identifying characteristic of this gun, "919". (T.T. 560-1).

There is no evidence that the MR9 Eagle or MR50 Eagle firearm that would fit the description Mr. Shipp provided of the firearm used in the August 5, 2019 shooting, was ever tested to see if it also "clicked" with the suspect magazine.

## SUMMARY OF ARGUMENT

Because the firearm used was not recovered, there is no direct evidence of its model or manufacturer. The Government failed to provide any reasonable quantum of evidence to support the interstate commerce element on Count 1. In fact, it is quite plausible that the firearm used in the shooting was manufactured in Minnesota. There was also insufficient evidence connecting the ammunition to this particular shooting on this particular day or connecting it to Mr. Haynes. Finally, the sentence imposed was greater than necessary to satisfy the purposes of 18 U.S.C. §3553(a).

Appellate Case: 22-1284    Page: 16    Date Filed: 06/28/2022 Entry ID: 5172136

# ARGUMENT

## I. THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

Based upon a sufficiency of the evidence argument, this Court will review the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by the evidence. *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010). This court will reverse a conviction only if no reasonable jury could have found the Defendant guilty beyond a reasonable doubt. *United States v. Wells*, 706 F.3d 908, 914 (8th Cir. 2013). The standard of review concerning whether the evidence is sufficient in any matter to support a conviction is indeed strict. *United States v. Savatdy*, 452 F.3d 974, 976 (8th Cir. 2006). A defendant challenging the sufficiency of the evidence confronts a high hurdle. *United States v. Cook,* 356 F.3d 913, 917 (8th Cir.2004).  However, that is a hurdle this case easily overcomes.  The dearth of evidence regarding the identity of the firearm employed in the charged incident, and by extension the interstate commerce nexus of that particular firearm, is thoroughly lacking. A close review of the evidence shows that the government has failed to prove beyond a reasonable doubt that Mr. Haynes' firearm ever crossed state lines, or that he or this firearm

11

were definitively connected to the ammunition as charged.

## A. Standards of review

Challenges to the sufficiency of evidence and denials of motions for judgments of acquittal are reviewed *de novo*. *United States v. Brown,* 634 F.3d 435, 438 (8th Cir.2011); *United States v. Wallenfang,* 568 F.3d 649, 656 (8th Cir. 2009); *see also, United States v. Sullivan*, 714 F.3d 1104, 1107 (8th Cir. 2013).

## B. There was insufficient evidence that the firearm in question had moved in interstate commerce.

For the Government to satisfy its burden of proving the interstate commerce element of the felon-in-possession statute it would need to adduce evidence that the firearm in question was manufactured outside the State of Minnesota. *See United States v. Schmidt*, 571 F.3d 743, 746-47 (8th Cir. 2009) (stating that 18 U.S.C. § 922(g) is "expressly tied to interstate commerce" because it contains a requirement that the firearm possession affects interstate commerce); *United States v. Carter*, 270 F.3d 731, 734-35 (8th Cir. 2001) (concluding that expert testimony was sufficient to prove the interstate commerce element of 18 U.S.C. § 922(g) where the expert testified that the firearm was manufactured in a state other than the state in which the defendant possessed it).  The Government's burden was certainly not lessened because it was unable to recover the firearm in question.   At

12

the very least, there needed to be proof beyond a reasonable doubt that the firearm in question was one which was manufactured in another state. Merely identifying a firearm that *could fit the bill*, was not sufficient, where a plausible alternative, manufactured in Minnesota, was not even considered in that analysis.

Notably, the Government's star cooperating codefendant witness, repeatedly denied that the firearm *he provided to Mr. Haynes*, was a Ruger.

Where, as here, the critical contested element is the interstate commerce nexus, it should stand to reason that any plausible alternatives that would not satisfy the nexus, should be conclusively ruled out. It doesn't make sense that an ATF agent who *specializes in interstate nexus testimony*, wasn't aware of the Minnesota manufactured model, the MR9 Eagle, 9-millimeter pistol, prior to his testimony at trial. And if the Government was aware of that possibility, and confident that it's "Ruger theory" would prevail, then why not test the MR9 Eagle, to make sure it didn't also "click" with the magazine? The MR9 Eagle creates an overwhelming reasonable doubt on the interstate nexus element. The conviction cannot stand based on a "good chance" that the firearm was a Ruger.

**C. There was insufficient evidence that the ammunition was connected to**

13

**this particular shooting incident, nor to Mr. Haynes.**

To constitutionally obtain a criminal conviction the government must prove its charge beyond a reasonable doubt, *Victor v. Nebraska*, 511 U.S. 1, 5 (1994); *In re Winship*, 397 U.S. 358, 364 (1970), which is a "subjective state of near certitude." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). Here, the sufficiency of the evidence question is whether the government proved with such near certitude that the discarded cartridge casings and magazine were possessed and discarded by Mr. Haynes. The circumstances simply leave too much room for error or doubt to satisfy the beyond a reasonable doubt standard.

The area where police recovered the discarded cartridge casings and magazine was a notoriously high crime area, and the ammunition identified is one of the most common types of ammunition used. Thus, it was quite plausible that the discarded cartridge casings would have come from a different shooting by a different person with a different gun. No usable fingerprints were recovered from the discarded cartridge casings. And the Mr. Shipp's trace DNA on the magazine recovered from less than a block from where Mr. Shipp was staying, could have been from one of Mr. Shipp's other guns. (The Government asserted that Mr. Shipp had more guns than pens, etc. (TT. 601-2).

Even crediting the government's assertion that because of the condition of

14

the casings and magazine, they were relatively freshly dropped, there was insufficient proof that Mr. Haynes was the person who had possessed and dropped it. The government's case needs not overcome every theory of innocence, *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004), but neither can it be based upon mere suspicion or conjecture. *See United States v. Diggs*, 527 F.2d 509, 513 (8th Cir. 1975). Defendant submits that the evidence in its totality failed to link him to the ammunition and magazine beyond a reasonable doubt.

And although it would certainly stand to reason that when Mr. Haynes was captured on surveillance video shooting a firearm, that firearm would necessarily be shooting some sort of ammunition, it matters quite a bit that we identify *which* ammunition, to satisfy the interstate commerce nexus element on this Count. There was insufficient evidence that the ammunition fired was the ammunition seized.

## II. THE SENTENCE IMPOSED WAS SUBSTANTIVELY UNREASONABLE.

Mr. Haynes' guidelines sentencing range was calculated as 100-125 months, with a total offense level of 24, and criminal history category of VI. ((Statement of Reasons) R. DOC. 247; PSR). He requested a sentencing variance to 77 months, which would have been double the sentence of his codefendant. He was sentenced

Appellate Case: 22-1284     Page: 21     Date Filed: 06/28/2022 Entry ID: 5172136

to 115 months on each Count, to run concurrently.   This is almost three times the sentence of his codefendant---*who provided him* with the weapon involved in the offense.  Mr. Shipp was sentenced to 42 months, which was a substantial variance from his guidelines range of 77-97 months.

## A. Standard of review

Mr. Haynes conceded that the Sentencing Guidelines calculations of the Presentence Report were correct.   The substantive sentence is otherwise reviewed for reasonableness considering the factors set forth in 18 U.S.C. §3553(a). *United States v. Jeffries*, 615 F.3d 909, 910 (8th Cir. 2010); *United States v. Miner*, 544 F.3d 930, 943 (8th Cir. 2008); *United States v. Pizano*, 403 F.3d 991, 995 (8th Cir. 2005). This is the equivalent of an abuse of discretion review. *United States v. Green*, 691 F.3d 960, 966 (8th Cir. 2012) ("We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard.") This "narrow and deferential" review means that only an "unusual case" will warrant a finding of a substantively unreasonable sentence. *United States v. Shuler*, 598 F.3d 444, 447 (8th Cir. 2010).

"A district court abuses its sentencing discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor,

16

gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." *Miner*, 544 F.3d at 932.

## B. The sentence did not adequately account for the hardship of the 28 months of "hard time" served in the Sherburne County Jail under COVID restrictions, during pretrial detention.

On the date of sentencing, (January 28, 2022), Mr. Haynes had been detained in federal pretrial custody for almost 2 years and 4 months (28 months). He was taken into federal custody on October 2, 2019. The following day he was ordered detained pending trial. Mr. Haynes served all his pretrial detention time at Sherburne County Jail. Like other local jails, Sherburne County Jail is not designed for long-term stays; rather, it is designed for short-term stays pending trial.

Courts have recognized that pretrial detention in county jails are generally harsher than prison. *See United States v. Fiorito*, 07-CR-212 (PJS/JSM), 210 U.S. Dist. LEXIS 36855, *114, 2010 WL 1507645 (D. Minn. April 14, 2010) acknowledging that "the conditions at the jail are harsher than the conditions at a typical federal prison"), *aff'd* 640 F.3d 338 (8th Cir. 2011). That realization of the harshness is why periods of pretrial detention in county trials are often referred to

17

by defendants, attorneys, and courts as "hard time." The conditions during COVID were even harsher than usual. Even when there were not complete lockdowns, people were frequently confined to their cells for as much as 20 hours a day. When there were lockdowns, which was often, there were extended periods of time when Mr. Haynes would be locked in his cell for 23 out of 24 hours.

Although any period incarceration is difficult, county jail time is many times harder. In response to this recognized reality, courts have granted downward variances reflecting the hardship and depravation of prolonged incarceration in county jails. *See United States v. Edmonds*, 920 F.3d 1212, 1214 (8th Cir. 2019) (appeal on other issues, however, the Court of Appeals noted the District Court had granted 3-month "hard time" credit to account for time spent in the Minnesota county jail).

In denying Mr. Haynes' request for a variance, the district court failed to give sufficient weight to this significant factor.

## C. The sentence did not properly consider Mr. Haynes' personal history and characteristics.

It has long been a basic principle in sentencing criminal defendants that the court should look at a person's specific circumstances, in particular a person's history and characteristics, in deciding an appropriate sentence. It has been uniform

18

and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-488 (2011), (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)).

As was detailed in his Sentencing position, (R. DOC.267), Mr. Haynes' life has been shaped and molded by the "devastating combination of familial dysfunction, extreme poverty, and growing up in a chaotic, violent environment." By the age of 11 and 12, Mr. Haynes was already spending most of his time in the streets.

As the final PSR reflects, while he was growing up many of Mr. Haynes' family members had criminal records, including his mother, father, and several siblings. *See* final PSR (R. DOC. 262) at ¶ 56. Throughout his childhood, Mr. Haynes' basic needs were rarely met as his parents struggled with drug addiction, resulting in neglect and the family suffering extreme poverty. At the age of 10, Mr. Haynes witnessed his best friend get murdered. At 12, he was kidnapped from outside his aunt's home and taken away in a speeding car and was unable to

19

escape. He was eventually taken to a park, where he was beaten up by the driver and other juveniles. *Id*. at ¶¶ 57 and 59.

The district court had an obligation to ensure that its sentence was "not greater than necessary" to satisfy the familiar goals of sentencing. 18 U.S.C. § 3553(a). Defendant respectfully submits that considering the substantial struggles he has endured as a young man, and in light of the circumstances of his pretrial detention, his 115-month sentence is excessive, disproportionate, and therefore unreasonable.

**CONCLUSION**

Appellant respectfully requests this Court reverse the conviction and remand for a new trial, or in the alternative, remand for resentencing.

Dated: June 28, 2022            Respectfully submitted,

<span style="margin-left:3em">/s/ Jennifer M. Macaulay</span>
<span style="margin-left:3em">Jennifer M. Macaulay</span>
<span style="margin-left:3em">I.D. No. 316842</span>
<span style="margin-left:3em">3300 Edinborough Way, Suite 550</span>
<span style="margin-left:3em">Edina, MN 55435</span>
<span style="margin-left:3em">651-231-1237</span>

<span style="margin-left:3em">Counsel for the Appellant</span>

20

In The
UNITED STATES COURT OF APPEALS
For The Eighth Circuit

UNITED STATES OF AMERICA,
                     Appellee,)      Appeal No. 22-1284

v.

JOHNNIE LAMAR HAYNES,      CERTIFICATE OF COMPLIANCE
                 Appellant.)


      I hereby certify that the Brief of Appellant filed in contains 3899 words, excluding the table of contents, table of citations, statements with respect to oral argument, preliminary statement, statement of issues, addendum and certificates of counsel and service, as counted by the word-processing system (Microsoft Office 365, v.2205) used to generate the brief. The brief otherwise complies with the type-volume limitations set forth in F.R.A.P. 32(a)(7)(B) and (C) and Eighth Circuit Rule 28A(c).


Dated: June 28, 2022

                         Respectfully submitted,

                         /s/ Jennifer M. Macaulay
                         Jennifer M. Macaulay
                         I.D. No. 316842
                         3300 Edinborough Way, Suite 550
                         Edina, MN 55435
                         651-231-1237

                         Counsel for the Appellant

# CERTIFICATE OF FILING AND SERVICE

I certify that on June 28, 2022, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. The brief and addendum were scanned for viruses using Norton Security Premium, updated with the most recent version as of the date of this filing.

I further certify that, within 5 days of receipt of the notice that the brief has been filed, I will transmit 10 paper copies of the Brief to the Clerk of Court by means of Federal Express , one copy to Appellant Mr. Haynes, by mailing him a copy at Mr. Johnnie Lamar Haynes, Reg. No. 22202-041, FCI-Memphis, Federal Correctional Institution, P.O. Box 34550, Memphis, TN 38184, and 1 paper copy to the Appellee as noted below via U.S. Mail.

/s/ Jennifer M. Macaulay
Jennifer M. Macaulay
Counsel for Appellant
Macaulay Law Offices, Ltd.
3300 Edinborough Way
Suite 550
Edina, MN 55435
651-231-1237

Copies to:
Mr. Craig Raymond Baune
Mr. Thomas Calhoun-Lopez
Assistant U.S. Attorney
Office of U.S. Attorney
600 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415